# STANT *v.* AMERICAN SECURITY & TRUST COMPANY.

---

WILLS; UNDUE INFLUENCE; EVIDENCE; DIRECTION OF VERDICT BY THE COURT.

1. The fact that there was unlawful cohabitation between the testator and the person charged with having exercised undue influence upon him, while an element in the proof of undue influence, is insufficient to invalidate the will of the testator in the absence of proof that it operated to influence him in making the will, especially where it appears that the person charged with exercising the undue influence died sixteen days before the execution of the will and six months before the execution of a codicil reaffirming the will.

2. Although in a will contest it appears that there was a quarrel in the testator's household, the members of which were the testator, his daughters, and a granddaughter, and violent words were uttered by all of the parties, and the grandfather took sides with his granddaughter as against his daughters, such a condition of affairs would neither show nor tend to show undue influence on the part of the granddaughter, although it would be proper proof leading up to evidence of such undue influence.

No. 1334.   Submitted November 5, 1903.   Decided January 5, 1904.

HEARING on an appeal by the caveators from a decree of the Supreme Court of the District of Columbia holding a special term for probate business, admitting to probate and record a paper propounded as a last will and testament, after a trial by a jury of issues framed under a caveat to the will, on the trial of which issues the court directed a verdict for the caveatees.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from a decree of the supreme court of the District of Columbia in its probate branch admitting to probate and record a paper writing purporting to be the last will and testament of one George Brown, and a codicil thereto.

George Brown died in Washington on May 2, 1901, at the age of 72 years, leaving personal property consisting of about $200 in cash, and household furniture of about the value of $200, and real estate, partly in Washington, partly in Philadelphia, and partly in Virginia, of the aggregate value of about $30,000 or $40,000. He was a widower, his wife having died in 1897, and he left as his heirs at law and next of kin three sons, five daughters, one granddaughter, who was the daughter of a deceased son, and one grandson, who was the son of a deceased daughter. By his will, which was executed on July 21, 1900, upwards of nine months before his death, he disposed of his estate to his children and grandchildren in somewhat unequal portions. After disposing of his personal property, he devised specifically some real estate in Philadelphia to one son and two granddaughters, of the latter of whom, however, only one survived him. He then devised to one of the daughters, Ida E. Stant, one of the appellants, some lots at Colonial Beach, in Virginia, and to one of the three sons he gave only $1. The residue of the estate he devised to the appellee, the American Security & Trust Company, of this city, as executor and trustee, to manage and to divide the income into six parts, of which one part was to go to each of two sons, one to each of two

daughters, one to the other three daughters jointly and collective-ly, of whom the appellants constituted two, and the remaining sixth to two grandchildren, of whom one died before the testator. The issue, if any, of the three daughters who received jointly the one-sixth portion were to have no share in the residue, all of which was to be divided among the issue of the other children.

On January 4, 1901, about three months before his death, the testator executed a codicil to his will, whereby he revoked the division of the residue of his estate into six parts, and directed that it should be divided into five parts. The one-sixth devised by the will to his two grandchildren was revoked, and specific property in Philadelphia, in lieu thereof, was de-vised to the survivor of the two. In other respects the will was left unchanged in respect to the beneficiaries of the income of this residue. The substantial change was only in the devise of one-fifth to each in the place of one-sixth as in the will.

The American Security & Trust Company was named as executor of the will; and the will and codicil both appear to have been executed in the office of said company, and to have been attested by some of its officers.

The will and codicil were both offered for probate by the executor; whereupon two of the three daughters who had been left only one fifth of the income jointly filed a caveat thereto alleging fraud and undue influence on the part of one Mary J. Brown, a granddaughter of the testator, who died before him on July 5, 1900, in their procurement, and want of testamentary capacity on the part of the testator. Issues were thereupon formulated according to law. They were five in number: (1) Whether the will and codicil had been duly executed; (2) whether at the time of execution the testator was of sound and disposing mind; (3) whether they had been executed under the undue influence of Mary J. Brown, or any other person; (4) whether their execution had been procured by fraud; and (5) whether they were the last will and testament and codicil of George Brown.

At the trial the formal execution of the will and codicil was proved, and there is no controversy in regard to it. The contest

was and is only as to the issues of testamentary capacity and un-
due influence.   The trial court excluded much of the testimony
that was offered on behalf of the caveators, and upon the testi-
mony that was admitted directed a verdict for the caveatees up-
on all the issues; and the case now comes before us upon these
rulings, on an appeal therefrom by the caveators.

*Mr. Percival M. Brown* and *Mr. Charles A. Keigwin* for the
appellants.

*Mr. Wm. F. Mattingly* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

There is no proof of fraud in this case, and no offer of any
such proof; and the issue of fraud may therefore be dismissed
from consideration.   Neither is there in fact any proof of testa-
mentary incapacity on the part of the deceased, George Brown.
It sufficiently appears that the deceased was a man of somewhat
violent character, profane in his language, abusive occasionally to
members of his family, and sometimes perhaps rather peculiar in
his actions.   But neither in the testimony admitted by the trial
court, nor in that which was excluded, do we find any evidence
of mental incapacity, such as to disqualify him from making
a valid will or testament.   It would serve no good purpose, either
in this case or as a precedent for any future case, to analyze
the testimony adduced or offered on behalf of the caveators.   It
must suffice to say that, after a careful perusal of it, we are of
the opinion that the trial court was entirely right in refusing
to submit it to the jury upon the question of testamentary ca-
pacity of the deceased.

It is upon the issue of undue influence and the testimony in
support of it that most reliance is placed on behalf of the cave-
ators; and it may be that there was error in some of the rulings
of the trial court in this regard.   But we fail to find any error
for which the judgment should be reversed.   The undue in-
fluence charged is stated to have been exerted principally, if

not exclusively, by Mary J. Brown, the granddaughter of the deceased, and who became a member of his household in November, 1899, shortly after his wife's death, and continued as such until her own death on July 5, 1900, sixteen days before the execution of the will, and nearly six months before the execution of the codicil. It is charged that this granddaughter had illicit connection with her grandfather, and that she caused him to become estranged from his three daughters, her aunts, who were left with diminished portions in the will; and there was an offer of proof of declarations by her that she would be revenged upon them for their antagonism to her in the household. For that there was antagonism and bickering and disturbance in the household between this young girl and her aunts may be assumed as having been proved. And also it may be assumed as having been proved that the grandfather espoused her cause in the quarrel, and that the three daughters for a time left the house as a consequence of the quarrel.

But again we fail to find here the proof that is sufficient in law to support the issue; and what the nature and amount are of such proof we learn from the opinion of the Supreme Court of the United States in the case of *Beyer* v. *LeFevre,* 186 U. S. 114, 46 L. ed. 1080, 22 Sup. Ct. Rep. 765. The fact of unlawful cohabitation, if such there be, is undoubtedly an element in the proof of undue influence. *Davis* v. *Calvert,* 5 Gill & J. 269, 25 Am. Dec. 282; *Dean* v. *Negley,* 41 Pa. 312, 80 Am. Dec. 620. But such fact without some proof, intrinsic or extrinsic, that it operated to influence the testator in making his will, can avail nothing, especially when it is so remote from the time of the making of the will as in the present case. Mary J. Brown, who is alleged to have exercised the undue influence here, was dead at the time of the making of the will; she had died, as already stated, sixteen days before the execution, and testimony involving her in so serious a charge should be received with great caution. It is true that the time was very short between the time of her death and the time of the execution of the will, and that the influence which may be supposed to have arisen from the existence of illicit relations, if such relations could be shown to

have existed up to the time of her death, might be assumed to continue to operate at the date of the making of the will. But, apart from the fact that the illicit relations in question are charged to have occurred a considerable time before the death of Mary J. Brown, the deceased, in and by his codicil executed long after her death, reaffirmed the will at a time when the existence of such undue influence could no longer be presumed.

It is of no avail to say or to prove that Mary J. Brown, the granddaughter, caused an estrangement between the testator and his daughters which affected the subsequent will. Such estrangement may have been to some extent justified by the conduct of his daughters; and even if it was wholly without justification and the testator was guilty of a grievous wrong to them in the disposition which he made of his property, it would not follow that there was undue influence exerted by Mary J. Brown to produce the result. If there was a quarrel in the house, as there evidently was, and violent words were uttered by all the parties, and the grandfather took sides with his granddaughter as against his daughters, that fact would neither show nor tend to show undue influence on the part of the granddaughter, although it would, of course, be proper proof leading up to evidence of such undue influence. In the present case the evidence goes no farther than to show a characteristic family quarrel. We think that the record discloses no evidence, adduced or offered to be adduced, sufficient to be submitted to the jury, upon the question of undue influence, or which, if submitted, would justify the rendition of a verdict in favor of the caveators.

There is some evidence tending to show undue influence upon the testator by Mrs. Mink, one of his daughters, who received a full share of his estate, and something more; but it is of so unimportant a character and so wholly disconnected from the time of the making of the will that it needs no consideration by us. On the whole record we are of opinion that there is no reversible error in the rulings of the trial court, and that the order or decree appealed from should be *affirmed, with costs. And it is so ordered.*